GIOVANNI MARUCCORO, Plaintiff, *v.* E. D. AND A. F. CRONK, INC., Defendant.

(County Court, Oneida County, April, 1916.)

Jurisdiction — of City Court of Utica — to render judgment in excess of $200 — Laws 1882, chap. 103.

The legislation relating to the jurisdiction of the City Court of Utica, since its creation by chapter 103 of the Laws of 1882 and the acts amendatory thereof, considered, and held that said court has jurisdiction to render a judgment in excess of $200.

MOTION to set aside the judgment herein, and the transcript thereof, as filed and docketed in the office of the clerk of the county of Oneida, and staying all proceedings thereunder.

Guile & McMahon, for motion.

Lee & Dowling, opposed.

HAZARD, J. This action originated in Justice's Court in the city of Utica. Plaintiff sued to recover $185 claimed to be due him from the defendant corporation as a result of some transaction in connection with an automobile. Defendant moved the case to the City Court of Utica, where by an amended answer it interposed a counterclaim for $308.29, following a general denial. Upon a trial by jury the defendant recovered a verdict for $288.29, besides costs. Plaintiff has failed to take an appeal and the time so to do has expired. However, he makes this motion, seeking relief upon the ground that the judgment entered is void and should not be permitted to stand or be enforced as a judgment of this court. This claim is founded upon the theory that the aggregate accounts exceed $400, and that, therefore, assuming the City Court to have only the same jurisdiction as a Justice's Court would have, it was without jurisdiction to proceed with the action; also upon the ground that (upon the same assumption) the City Court was without power to render a judgment in excess of $200 damages. It is perhaps unnecessary to consider the first part of the claim very seriously, especially as it is impossible to say how the jury arrived at their verdict, but apparently they disallowed the plaintiff's claim entirely. We thus come to the question of the power of that court to render a judgment for damages in excess of $200. It is provided by the Code, section 2949, that a Justice's Court cannot give judgment on a counterclaim for over $200, but it has been held that the court is not ousted of jurisdiction by a counterclaim exceeding $200 in amount. *Heigle* v. *Willis*, 50 Hun, 591. See, also, *Dale* v. *Prentice*, 126 App. Div. 127; *Bartlett* v. *Mugett*, 75 Hun, 292. Inasmuch as the judgment rendered exceeds $200, it was, under section 2949 of the Code, clearly beyond the power of the City

Court of Utica to render such a judgment unless it has greater civil jurisdiction than is given to Justices' Courts. The City Court of Utica was founded by chapter 103, Laws of 1882. Section 4 of that act, dealing with the jurisdiction of the City Court, was amended by chapter 352 of the Laws of 1882, and again by chapter 154 of the Laws of 1889, and, so far as it affects the point at issue, reads as follows: "Section 4. Said city court shall have and possess the same powers and jurisdiction now possessed by courts of justices of the peace in the city of Utica, *and by the recorder's court of Utica.*" It thus appears that some power and jurisdiction was given to the City Court in excess of or in addition to that possessed by the ordinary Justices' Courts. Having reference to the law creating and conferring power upon the Recorder's Court of the city of Utica, we find it in chapter 319 of the Laws of 1844, which says that it shall be a court of record, and that "The said court shall have power to hear, try and determine according to law, all local actions arising in said city and not elsewhere." While the language which follows is not entirely explicit or clear it seems to be the fair purport of it to give to the Recorder's Court of Utica "the power and authority of the Courts of Common Pleas of the several counties of this State in suits commenced or prosecuted therein," etc. If, then, the City Court of Utica has the same powers and jurisdiction as the Recorder's Court had, and the Recorder's Court of the city of Utica had the same power and jurisdiction as the Court of Common Pleas, the case resolves itself down to a consideration of the question as to what was the extent of the authority and jurisdiction of the old court of Common Pleas of Oneida county. This question might seem to be an exceedingly simple one, but, after examining statutes and codes and cases industriously for

some time, I have found it to be an obscure and difficult question. The courts of Common Pleas seem to have been the predecessors of the county courts, and appear to have been among the very earliest courts established in this state, dating back into the colonial times. In Smith's History of New York (Vol. 1, p. 311) we find this: '' The Court of Common Pleas takes cognizance of all cases where the matter in demand is in value above five pounds. It is established by an ordinance of the Governor in council. The judges are ordinarily three, and hold their office during pleasure.'' In Laws of the Colony of New York, chapter 28, passed November 11, 1692, it is among other things provided that '' There shall be kept and holden a Court of Common Pleas in each respective county  *  *  *  and such places in each respective county as said General Sessions of the Peace are to be kept, and to begin the next one after the session terminates, and then only to hold and continue for the space and time of two days after and no longer, and that there be a judge assisted by three Justices of the Peace  *  *  *  commissioned to hold the same Court of Pleas, three whereof to be a quorum, and that the several and respective Courts of Pleas hereby established shall have power and jurisdiction to hear, try and finally determine all actions, and all matters and things,  *  *  *  of what nature and kind whatsoever, so that the action or cause of action  *  *  *  doth not relate or concern title to land, provided always and it is hereby enacted that there shall not be any appeal  *  *  *  of any action or suit, or any judgment or execution that shall be determined in said Courts of Pleas to the value of 20 pounds or under.'' In chapter 10 of the Laws of New York, passed February 5, 1787, we find the following: ''And be it further enacted by the authority aforesaid that the said courts of common pleas and mayors'

courts shall be and hereby are respectively authorized
and appointed to hear, try and determine according
to law all actions real, personal and mixed, suits, quar-
rels, controversies and differences arising within the
several and respective cities and counties for which
the same are or shall be held.'' The next act which I
am able to find was that passed April 5, 1813, which
provides: '' III. And be it further enacted, that the
courts of common pleas of the several counties of this
State shall be and hereby are authorized and appointed
to hear, try and determine, according to law, all
actions, real, personal and mixed, arising within the
said counties respectively, and all transitory actions,
although the same may not have arisen within the said
counties respectively.'' In the Laws of 1823 we find
chapter 47 dealing with the Courts of Common Pleas
in the several counties of this state and providing
that the judges of the County Courts '' shall have
power to hold the courts of common pleas and gen-
eral sessions of the peace. That the said courts of·
common pleas and general sessions of the peace
shall respectively have and exercise the same jurisdic-
tion, power and authority, and proceed in like manner
as they were by law authorized to do, on the 31st day
of December last.'' An addition of the Revised Stat-
utes of the state of New York, published in 1829 (Vol.
2, p. 208), contains apparently the substance of one or
more of the acts above referred to, including: '' to
hear, try and determine, according to law, all local
actions, arising within the county for which such court
shall be held; and all transitory actions, although the
same may not have arisen within such county: (2) to
grant new trials: (3) to hear and determine appeals
from Justices' Courts, in the uses and in the manner
prescribed by law:'' etc. In the Laws of 1836, chapter
526, we find a statute providing that in cases of appeal

from Justice's Court to any Court of Common Pleas, " the judgment of such Court of Common Pleas shall be final and conclusive between the parties," but providing that the presiding judge of the Court of Common Pleas may in his discretion grant a certificate that in his opinion the case is a proper one to be carried to the Supreme Court, etc.

The Courts of Common Pleas, in counties other than New York, were abolished by the Constitution of 1846, to take effect the first Monday in July, 1847, and actions in the Courts of Common Pleas were transferred to the County Courts. The Court of Common Pleas in the city and county of New York was a court of considerable importance. Some of its decisions are to be found in the printed reports of Hilton and of Daly. That court was abolished by article 6, section 5, of the present Constitution, " from and after the first day of January, 1896," and actions pending therein and the judges of the court were transferred to the Supreme Court. Many decisions to be found in the reports above mentioned, and in many others, refer to the Court of Common Pleas of the city and county of New York, which seems to have been a more important court and to have had greater jurisdiction than the Courts of Common Pleas in other counties.

Coming to an examination of the cases bearing upon the subject of the amount of jurisdiction of the old Court of Common Pleas, while there are cases of about every conceivable other point as to its jurisdiction, I do not find any single case specifically deciding whether its jurisdiction was limited in amount or unlimited. In *Foot* v. *Stevens*, 17 Wend. 483, a case decided in 1837, it was said that the Court of Common Pleas was a court of general jurisdiction, and that " in point of subject matter its jurisdiction is equal to that of the Common Pleas in England, and that of this (the

Supreme) Court.'' Judge Cowen adds: '' True it (the Court of Common Pleas) is relatively inferior to and under the control of this court. * * * So is this court inferior to the court of errors.'' The case last quoted from was cited and followed in *Hart* v. *Seixas,* 21 Wend. 40–45. As a matter of fact all that was really decided in either of those cases was that inasmuch as the Court of Common Pleas was a court of general jurisdiction it might therefore *be presumed* that it had jurisdiction, in the absence of evidence to the contrary. On the other hand, in the case of *People ex rel. Armstrong* v. *Court of Common Pleas of the County of Oneida,* 20 Johns. 22, the court said: '' Courts of Common Pleas are creatures of statute, and, in every sense, *inferior courts.*'' Again, in *People* v. *Justice of Delaware Common Pleas,* 1 Johns. 183, the court said, speaking of the Courts of Common Pleas: '' They are properly inferior courts and subject to the control of this court. * * * On the argument, they were compared to the Common Pleas in England, but the resemblance is in name only.''

Whether the old Court of Common Pleas as it existed in this county was justly to be regarded as an inferior court or otherwise, I have been unable in any statute or case to find that its jurisdiction was limited as to *amount.* It was limited territorially in about the same way as the present County Courts are. An evidence of the fact that its jurisdiction was at least $500 is found in chapter 72 of the Laws of 1787, which, in paragraph II, provided '' that no personal action or suit now pending or hereafter to be commenced in any Mayors' Court or Court of Common Pleas in this state, upon any bond or specialty, or for any other matter, cause or thing whatsoever, where the sum mentioned in the condition of such bond or specialty, with the interest thereon, or the matter or thing in demand, suit

or controversy, *shall not exceed the sum of 100 pounds,* current money of this state, shall be stayed or removed into the Supreme Court, by any writ of habeas corpus, certiorari, or other writ of process whatsoever, other than writs of error or attaint.'' This seems to clearly indicate that the Court of Common Pleas had, at that time, jurisdiction at least to the amount of $500 and probably in excess of it; and it therefore seems to me to follow that, as applied to the case at bar, the City Court of Utica has authority to render judgment for an amount in excess of $200. I think this decision is consistent with the tenor of the City Court Act, which at section 4 (Laws of 1882, chap. 103) says: '' Said city court shall have and possess the same powers and jurisdiction now possessed by courts of justices of the peace in the city of Utica, *and by the recorder's court of Utica.*'' Had it been the intention of the legislature to confine the jurisdiction of the City Court to that of Justices' Courts, no reason is apparent why it should have added the words '' and by the recorder's court of Utica.'' Those words seem clearly to indicate an intention to give to the City Court some jurisdiction in excess of that bestowed upon Justices' Courts. It is true that section 6 of the act provides that: '' The proceedings, practice and pleadings, including appeals, shall be governed in all civil matters by the provisions of the Code of Civil Procedure relating to justice's courts,'' but that provision is not necessarily inconsistent with giving to the City Court at least some additional authority and jurisdiction. It is unnecessary as well as improper for me to decide the extent of the jurisdiction of the City Court of Utica, as to amount, but I have reached the conclusion that that court had power to render the judgment for $288.29 damages, which was rendered herein, and I so decide.

This decision renders it unnecessary to decide the

points raised in the briefs and upon the argument as to the propriety of seeking relief by motion instead of by appeal. Undoubtedly, however, should the decision have been that the judgment rendered in the court below was in excess of the jurisdiction of the City Court, and therefore void, it would have been within the power of this court to have canceled the judgment and execution, so far as this court and its processes and records are concerned. *Daniels* v. *Southard,* 23 Misc. Rep. 235; 36 App. Div. 540; *Rowe* v. *Peckham,* 30 id. 175; Code Civ. Pro., § 348; *Wood* v. *Wesley,* 75 Misc. Rep. 521; *Matter of Automatic Chain Co.,* 64 id. 280; *Fallon* v. *Crocichia,* 52 id. 503. The further point is raised that inasmuch as this action was started in Justice's Court, where it was impossible to render a judgment for either party in excess of $200, that even if the City Court has greater jurisdiction than the Justice's Court, in view of the fact that the action was started in Justice's Court no greater judgment can be rendered in the City Court than might have been rendered in the action where it was originally commenced. I think the case of *Ludwig* v. *Minot,* 4 Daly, 481, is authority for a contra view. The facts in that case seem to be practically identical with those in the case at bar, viz.: A removal from a court of limited jurisdiction to one having a greater jurisdiction, and the judgment rendered in the latter court in excess of the jurisdiction of the court in which the action was commenced. In this case the court said: '' In the administration of justice, as authorized by its constitutional powers, it had not two courses, one for cases brought into it by due process of removal from inferior courts and another for those originally commenced therein. The removal of the cause into this court attached to it all the incidents of jurisdiction appertaining to this court.''

Incidentally, it is to be observed that in the case last cited the judgment rendered was for $260, but the case was in the Court of Common Pleas of the city and county of New York, a court which may possibly, at least in some respects, have had some jurisdiction superior to that of the courts of Common Pleas in other counties.   However, we find the case of *Van Lew* v. *King,* 3 Cow. 375, a Common Pleas case decided in 1824, and *not* in the Common Pleas, New York city and county.   In that case the plaintiff claimed $250, but actually recovered only $38.33.   That case has some bearing on the one at bar as showing, apparently, that the Court of Common Pleas had jurisdiction in excess of $200.   The motion must be denied.

Motion denied.